The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN D. ANTHONY,

  Plaintiff,

  v.

UNITED STATES OF AMERICA,

  Defendant.

Civil Action No. 3:19-cv-05337-BJR

ORDER GRANTING SECOND MOTION FOR SUMMARY JUDGMENT; GRANTING MOTION TO SEAL; DENYING MOTION TO AMEND SCHEDULING ORDER

### I.   INTRODUCTION

On November 5, 2015, U.S. Army Ranger Specialist Jesse M. Suhanec absented himself from Joint Base Lewis-McChord just south of Tacoma, Washington and shot Plaintiff Kevin D. Anthony, a civilian, multiple times while Mr. Anthony sat in his truck. While Mr. Anthony survived the attack, he was grievously injured and permanently disabled. He now sues the United States pursuant to the Federal Tort Claims Act ("FTCA") and seeks to recover damages, alleging that the event occurred as a result of Army negligence. Before the Court is Defendant's second motion for summary judgment, accompanied by a motion to seal, and Plaintiff's motion to amend the Court's scheduling order. Having reviewed the motions, the oppositions thereto, the record of

1

the case, and the relevant legal authorities, the Court will grant Defendant's motion for summary judgment and its motion to seal, and the Court will deny Plaintiff's motion to amend the scheduling order. The reasoning for the Court's decision follows.

## II.  BACKGROUND

The facts underlying this action are detailed in the Court's November 2, 2020 Order granting in part and denying in part Defendant's motion to dismiss and first motion for summary judgment. Dkt. No. 64 at 2-4. In that Order, the Court dismissed several of Plaintiff's negligence claims as barred by the discretionary-function exception to the FTCA's waiver of sovereign immunity. *See id.* at 13-20. The surviving claims were for negligent hiring, negligent training, and medical negligence. *See id.* at 26. The Court granted summary judgment as to Plaintiff's negligent training claim, and that claim was dismissed with prejudice. *Id.* The Court denied summary judgment on the negligent hiring claim, and that claim is set for trial in October 2021. *Id.* As to the medical negligence claims, the Court agreed with Defendant that Plaintiff could not state a claim without a medical expert who would testify as to the standard of care governing the actions of the Army psychiatrists who treated Suhanec. *Id.* at 22. Because Plaintiff had not presented any expert medical testimony, the Court granted summary judgment and dismissed Plaintiff's medical negligence claims without prejudice. *Id.* at 22, 26.

On December 23, 2020, based on Plaintiff's representation that he had "retained the necessary experts," the Court granted Plaintiff leave to amend his complaint. Dkt. No. 71. On January 7, 2021, the Court reopened discovery for the limited purpose of the disclosure and examination of Plaintiff's new experts and ordered, *inter alia*, that expert disclosures be made by May 31, 2021 and that expert depositions take place by July 14, 2021. Dkt. Nos. 75, 78.

On May 31, 2021, Plaintiff disclosed neurologist Steven M. Arkin, M.D. as his lone medical expert. Dkt. No. 81 at 4.[1] Defendant deposed Dr. Arkin on June 22, 2021. *Id.* Both parties agree that it became obvious in the course of Dr. Arkin's deposition that he was "not qualified to opine on Army Regulations or the Washington State standard of care for mental health (or any) practitioners." *Id.*; Dkt. No. 88 at 3. For one, Dr. Arkin testified that he had not "agree[d] to review records and render opinions in this case until May 22, 2021, only nine days before the disclosure deadline." Dkt. No. 81 at 4. Additionally, Dr. Arkin, who is based in Ohio, admitted that he had never practiced medicine in Washington, that he is a general neurologist and had no certifications or special training in psychiatry, that he had no education or training in Army regulations or Army medical care, and that he had not done any special research, in the form of reviewing literature or speaking to other physicians in the field, to inform his analysis of Plaintiff's case. *Id.* at 8-9.

On July 2, 2021, Plaintiff's counsel informed Defendant that Dr. Arkin had withdrawn from his expert engagement. *Id.* at 5. Plaintiff's counsel also expressed his intention to request additional time to procure a new expert, a request defense counsel indicated she would oppose. *Id.* Nevertheless, Defendant's counsel urged Plaintiff's counsel to file his request quickly given the approaching deadline for dispositive motions (August 4, 2021), and Plaintiff's counsel stated that he would do so the week of July 5. *Id.*

Plaintiff did not file a motion for an extension of time that week or at any point before the

---

[1] The facts discussed in the succeeding two paragraphs are taken from Defendant's Second Motion for Summary Judgment (Dkt. 81). Unless otherwise noted, Plaintiff does not contest Defendant's version of events. *See* Dkt. Nos. 85, 88.

3

dispositive-motion deadline. On July 28, 2021, Defendant filed its second motion for summary judgment arguing that, if Plaintiff still intended to rely on Dr. Arkin's expert testimony, then his testimony should be excluded because Dr. Arkin is unqualified, and that, alternatively, if Plaintiff did not intend to rely on Dr. Arkin's testimony, then Plaintiff would lack the medical expert needed to support his medical negligence claims. *See* Dkt. No. 81. Plaintiff's response to Defendant's motion attempts to explain his various missteps—in short, by blaming them on a paralegal—but does not dispute that Dr. Arkin is unqualified (and, in any event, no longer retained) or that there is no other expert medical testimony in the record on which Plaintiff can rely. *See* Dkt. No. 85. Rather, Plaintiff requested that the Court "hold Defendant's motion in abeyance until August 31, 2021," at which time Plaintiff was to inform the Court whether another expert would be available to replace Dr. Arkin. *Id.* at 8. On August 30, Plaintiff formally filed a motion to "replace Plaintiff's liability expert" and to amend the Court's scheduling order "to accommodate this change." Dkt. No. 88 at 1, 7.

### III.   DISCUSSION

Under Federal Rule of Civil Procedure 16, pretrial scheduling orders "may be modified only for good cause and with the judge's consent." Fed R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* If it is clear that the moving party was not diligent in its efforts to comply with the Court's schedule, then "the inquiry should end and the motion to modify should not be granted." *Zivkovic v.*

4

*California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citation omitted).[2]

Here, Plaintiff blames his inability to comply with the Court's scheduling order on the repeated failures of an unnamed "medical paralegal" retained by Plaintiff's counsel in November 2020. *See* Dkt. No. 88 at 2. The paralegal allegedly represented to Plaintiff's counsel, in late 2020, that he or she had found four medical experts willing and able to testify in support of Plaintiff's claims, when in fact there was only one (unqualified) expert available. *Id.* According to Plaintiff, in the five months between the Court's limited reopening of discovery (January 2021) and the expert disclosure deadline (May 2021), "Plaintiff's counsel's office continually requested updates from the medical paralegal regarding the progress of the Disclosures" and was repeatedly told they were "forthcoming." *Id.* at 3. Apparently, Plaintiff's counsel received Dr. Arkin's disclosure so close to the May 31, 2021 deadline that he "did not have time to review it" before transmitting it to Defendant. *Id.* Once Plaintiff's counsel had a chance to review the disclosure, he "expressed serious reservations about it" (seemingly to the paralegal, not Defendant) and "immediately started working on options [for] supplementing or replacing it." *Id.* Nevertheless, Plaintiff's counsel allowed Dr. Arkin's deposition to go forward on June 22, 2021 and otherwise behaved as though Dr. Arkin would continue to serve as Plaintiff's expert. *Id.* Not until Dr. Arkin resigned on July 2, 2021 did Defendant become aware that Plaintiff was in fact seeking a new expert. *Id.* at 4-5.

The Court finds that Plaintiff failed to act diligently in his search for an expert and therefore

---

[2] Plaintiff incorrectly cites a four-factor test for certain motions for reconsideration that does not apply to this case. *See* Dkt. No. 88 at 7 (citing *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010)).

5

cannot demonstrate good cause for a modification of the scheduling order. Counsel's effort to shift the blame onto a paralegal is unavailing. As Defendant notes, courts generally hold attorneys responsible for errors made by their staffs. *See, e.g.*, *Hart v. United States*, 817 F.2d 78, 81 (9th Cir. 1987) ("Secretarial negligence, if it exists, is chargeable to counsel."). Furthermore, even if the Court were to excuse the mistakes allegedly made by the paralegal, Plaintiff's counsel independently failed to exercise diligence in procuring a suitable expert. For example, although counsel claims he pestered the paralegal about the delay in preparing expert disclosures, he did not, in the five months leading up to the disclosure deadline, personally intervene to determine how far along the disclosure was, or even who the expert was. *See* Dkt. 88 at 3 (suggesting Plaintiff's counsel was not aware of the expert's identity until mid-May 2021). Additionally, that Plaintiff's counsel may have "expressed serious reservations" about Dr. Akin to the paralegal is irrelevant, because counsel nevertheless forwarded his disclosure to Defendant (sight-unseen), allowed his deposition to go forward, and failed to mention his apparent reservations to opposing counsel or the Court. There is no way Plaintiff's counsel's behavior could be deemed diligent.

The Court further notes that this is not the first time Plaintiff's failure to meet deadlines has delayed this action. In a September 11, 2020 Minute Order, the Court admonished Plaintiff's "total disregard for this Court's scheduling orders" but nevertheless granted his third request for an extension of time to respond to Defendant's first summary judgment motion. Dkt. No. 43. It has been approximately 10 months since the Court ruled on that motion and allowed Plaintiff additional time in which to find a medical expert to resuscitate his medical negligence claims. No progress has been made and—despite the Court's patience and repeated leniency—Plaintiff has again failed to comply with the Court's deadlines. Now, on the eve of trial, Plaintiff still lacks an

6

expert and still cannot support claims for medical negligence. Therefore, the Court finds Plaintiff has not demonstrated good cause for another extension.[3] As Plaintiff concedes, he cannot support his medical negligence claims on the current record, and those claims are dismissed with prejudice. This case will proceed to trial on Plaintiff's negligent hiring claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's second motion for summary judgment (Dkt. Nos. 81, 83) and motion to seal (Dkt. No. 80). The Court hereby DENIES Plaintiff's motion to amend the scheduling order (Dkt. No. 88).

DATED this 8th day of September, 2021.

*[signature]*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[3] Although not necessary to the Court's determination, prejudice to Defendant also weighs in favor of denying Plaintiff's proposed modification of the scheduling order. As Defendant notes, it has already been obligated to unnecessarily produce rebuttal expert reports and depose Dr. Arkin, in addition to the many related emails, phone calls, and meetings the parties had trying to clarify the status of Plaintiff's purported expert. *See* Dkt. No. 90 at 3-4. Requiring Defendant to repeat this process, all while delaying the case yet again, would clearly amount to prejudice.